IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT
SHERMAN DIVISION

| | | |
|---|---|---|
| HOPE HALLEEN and DONNA MANER, individually and on behalf of all others similarly situated, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 4:16-CV-00055 |
| BELK, INC., | § § § | |
| Defendant. | § | |

**BELK, INC.'S BRIEF IN RESPONSE
TO PLAINTIFFS' DISCOVERY PROPOSAL**

Defendant Belk, Inc. ("Belk") submits its Response to Plaintiffs' Notice of Filing Scheduling Report and Memorandum of Law in Support Thereof [Doc. 76].

**I.
ARGUMENTS AND AUTHORITIES**

Plaintiffs, in Section IV.A of their discovery proposal, argue "expansive discovery is inappropriate in FLSA collective actions and inappropriate in this case." To support their position, Plaintiffs, in largely string citation format, direct the Court's attention to case law they suggest support their contentions. However, upon closer examination, the majority of Plaintiffs' authority actually supports Belk's proposal that it be permitted to obtain *representative discovery* from one plaintiff per store.

First, Plaintiffs point to *Nelson v. Amer. Standard, Inc.*, 2009 U.S. Dist. LEXIS[1] 113448 (E.D. Tex. Dec. 4, 2009)[2], a case discussed in Belk's brief in support of its discovery proposal.

---

[1] Belk relied on Westlaw citations for the unpublished district court cases discussed in its brief. However, because Plaintiffs rely on LEXIS cites in their countervailing proposal, Belk will follow suit for ease in cross-referencing pin cites. Belk will provide parallel Westlaw citations to the cases.

1

Specifically, Plaintiffs quote Magistrate Judge Everingham for the general proposition that "limiting discovery in a FLSA action to a relevant sample minimizes the burden imposed on plaintiffs while affording the defendant a reasonable opportunity to explore, discover, and establish an evidentiary basis for defenses." *Id.* at *9-10 (internal quotations omitted by Plaintiffs). Plaintiffs, however, fail to note the parties in *Nelson agreed* to subject 91 opt-in plaintiffs to depositions selected at random, "***with a specified number of opt-ins for each location***," *id.* at *4,[3] and the court's order required each of them to respond to written discovery as well. Given these facts, Plaintiffs' reliance on *Nelson* is misplaced and does nothing to support their assertion that the discovery requested by Belk (*i.e.* one plaintiff from each location) is grossly overbroad and inappropriate.

Plaintiffs' remaining authority comes from federal districts outside of Texas and the Fifth Circuit. For example, Plaintiffs cite to *Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 188, 190 (S.D.N.Y. 2014) for the proposition that "the scope of post-conditional certification discovery of opt-ins should be limited to preserve the efficiencies of FLSA collective actions." [Doc. 76 at p. 7.] But again, upon closer examination, *Scott* does not support Plaintiffs' position. In *Scott*, the parties *agreed* that 58 opt-in plaintiffs would be deposed,[4] and the only issue before the court was whether the defendant was entitled to obtain written discovery from every remaining opt-in plaintiff, numbering well over 500. *See id.* at 192. The court rejected the request, but determined that permitting written discovery from the plaintiffs to be deposed, ***plus*** an additional sub-set of

---

[2] No. 2:07-CV-10, 2009 WL 4730166 (E.D. Tex. Dec. 4, 2009).

[3] All emphasis added.

[4] There is no discussion in the opinion regarding *why* 58 opt-ins was considered by all sides to be a sufficiently representative group for purposes of depositions.

fifteen, would be "acceptable for representational discovery." Thus, the court in *Scott* permitted *broader* representative discovery than Belk seeks.

Plaintiffs also cite *Goodman v. Burlington Coat Factory Warehouse Corp.*, 292 F.R.D. 230, 234 (D.N.J. 2013), which they characterize as a case in which the "Court limited the defendant to 34 Opt-In depositions out of 572 (5% of the collective), rejecting the defendant's request to serve written discovery on all opt-ins." [Doc. No. 74 at p. 7.] However, to be clear, Belk does not seek to serve written discovery on all opt-in plaintiffs – only those identified for deposition. Belk instead urges the Court to follow the rationale of *Goodman*, in which the court struck a self-styled "middle approach" observing:

> Given the extensive claims in the case, defendants must have an opportunity to conduct a meaningful amount of discovery. There is no getting around the fact that defendants' discovery will be extensive. After all plaintiffs conditionally certified a nationwide class of 572 Assistant Store Managers located around the United States. ***Plaintiffs can hardly be heard to complain about the cost, burden and difficulties associated with defendants' discovery when they chose to pursue an extensive class. Plaintiffs knew 'what they were in for' when the filed the case.***

*Goodman*, 292 F.R.D. at 233. The court declined to grant "limitless" discovery, but recognized that in deciding whether to decertify a class, courts generally undertake a "fact intensive inquiry which analyzes, *inter alia*, whether the plaintiffs are located in the same department or location ... and whether the plaintiffs have similar salaries and circumstances of employment." *Id.* at 232 (citing *Zavala v. Wal-Mart Stores, Inc.*, 691 F.3d 527, 536-537 (3d Cir. 2012)). In anticipation of engaging in the same fact-intensive analysis, and in light of the fact that it is *Plaintiffs* who have chosen to place the management styles and practices related to STMs at 179 Belk retail locations at issue, the Court should permit Belk to take the representative discovery outlined in its discovery plan.

3

In *Craig v. Rite-Aid Corp.*, 2011 U.S. Dist. LEXIS 13843 (M.D. Pa. Feb. 7, 2011)[5], a case involving over 1,000 opt-ins, the court rejected the type of full-scale individualized discovery that Belk does ***not*** seek. In so doing, however, the court recognized that other courts considering smaller classes had permitted full-scale individualized discovery. *Id.* at *20 (citing cases permitting the "full range of discovery" to be propounded on conditionally certified classes of 160, 306, 152, 49, 127, and 100 opt-ins). Although Belk agrees with many reported opinions observing that there is no "magic number," it notes that the average size of the classes subjected to full-scale individualized discovery, in the cases cited with approval by the *Craig* court, numbers approximately 150. Thus, Belk's request to take appropriate *representative* discovery from a group of Discovery Plaintiffs is only slightly greater in size than groups for which *individualized* discovery was permitted without evident controversy.

Plaintiffs additionally cite *Bradford v. Bed, Bath & Beyond, Inc.*, 184 F. Supp. 2d 1342 (N.D. Ga. 2002), which seems to stand in stark contrast to the severe and arbitrary limitations for which Plaintiffs advocate. In *Bradford*, the court did not resolve a discovery dispute, but rather considered the defendant's (post-discovery) motion to decertify a conditionally certified collective action. "More than 300" plaintiffs opted in after conditional certification; these plaintiffs "worked as 'department managers' at twenty-four (24) different BB&B stores in eleven states." *Id.* at 1344. Defendants had been permitted to conduct discovery from twenty-five of the opt-in plaintiffs; that is, **one opt-in plaintiff from each store**, just as Belk seeks permission to do in this case. *Id.*[6]

---

[5] Civil Action No. 4:08–CV–2317, 2011 WL 9686065 (M.D. Pa. Feb. 7, 2011).

[6] In the opinion, the court does not expressly state that the number of discovery plaintiffs and the number of stores put in issue by the plaintiffs were purposefully correlated. It is difficult to draw any other conclusion. In any event, the fact of the correlation supports Belk's proposition that "one per store" is an appropriate amount of representative discovery.

In *Gentrup v. Renovo Servs., LLC*, 2010 U.S. Dist. LEXIS 143203 (S.D. Ohio Aug. 17, 2010)[7], the court rejected the defendant's request for full individualized discovery, but also determined that the plaintiffs' proposal, which would have subjected less than ten percent of the group to discovery, was "too limited and must be expanded in order to afford Defendants a reasonable opportunity to discover an evidentiary basis for its defenses." *Id.* at *27. The court struck a middle ground authorizing representative discovery from each state in the class. Specifically, the opt-in plaintiffs had worked in twenty-two different states, and because "it is reasonable that Defendants should be able to question Plaintiffs who [worked] in each of these states" regarding the potentially different employment practices in place in each state, the court permitted defendants to conduct representative discovery from the named plaintiffs and from twenty-two opt-in plaintiffs of defendants' choice. *Id.* at 27-28 and n. 10.

In *Cranney v. Carriage Servs., Inc.*, 2008 U.S. Dist. LEXIS 113606 (D. Nev. June 16, 2008)[8], the "Defendants oppose[d] any limitation on discovery from opt-in plaintiffs." *Id.* at *10. The court refused, but also declined to limit discovery based solely on an arbitrary percentage of the number of opt-in plaintiffs. Instead, the court recognized that "fairness dictates that the defendant should be permitted to conduct enough discovery to support a motion to decertify the conditionally certified class," including discovery intended to reveal "whether there are disparate factual and employment settings of the individual plaintiffs[.]" *Id.* at *15. Accordingly, the court permitted the defendant to propound discovery on opt-in plaintiffs representing a "***relevant combination of workers and work sites***." *Id.* at *16-17. This Court should do the same. Based on the claims Plaintiffs have chosen to advance, the "relevant combination of workers and work sites" consists of one plaintiff per store.

---

[7] No. 1:07–cv–430, 2010 WL 6766418 (S.D. Ohio Aug. 17, 2010).

[8] No. 2:07-cv-01587, 2008 WL 2457912 (D. Nev. June 16, 2008).

Finally, Plaintiffs simply – and presumably unintentionally – misstate the outcome of *Wellens v. Daiichi Sankyo Inc.*, 2014 U.S. Dist. LEXIS 177877 (N.D. Cal. Dec. 29, 2014)[9]. Rather than "allowing discovery on 39 of 248 Opt-Ins," [Doc. No. 76 at p. 8], the court fashioned a compromise solution from two extremes, through which the "total number of unique Plaintiffs from whom Defendant will have the opportunity to obtain evidence on issues pertinent to the propriety of class treatment will be approximately 99, representing 40% of the class." *Id.* at *13.[10]

In addition to citing case law supporting Belk's position, Plaintiff cite several of cases that simply have no relevance to the matters presently in dispute. For example, Plaintiffs cite *Adkins v. Mid-America Growers, Inc.*, 141 F.R.D. 466 (N.D. Ill. 1992),[11] for the general proposition that written discovery should proceed on a representative rather than individual basis. Belk does not contest this and seeks appropriate representative discovery. Beyond the general proposition, *Adkins* is not instructive, as it involved employees who all worked at a single jobsite. *Id.* at 467.

Plaintiffs also cite *In re Am. Family Mut. Ins. Co. Overtime Pay Litig.*, 2009 U.S. Dist. LEXIS 39383, *6 (D. Colo. Apr. 27, 2009)[12], in which the court held the defendant was "not entitled to individualized discovery from each and every opt-in plaintiff." [Doc. No. 76 at p. 7.] Again, Belk is not requesting such individualized discovery. In any event, the court was not

---

[9] No. C-13-00581, 2014 WL 7385990 (N.D. Cal. Dec. 29, 2014).

[10] Plaintiffs also cite *Kensey v. Entertainment U.S.A.*, No. CV-14-01105, 2015 U.S. Dist. LEXIS 88499, 2015 WL 4064715 (D. Ariz. July 2, 2015), which is not instructive at all, in that it involved defendants arguing (and, at least as revealed in the opinion, *only* arguing) that "individualized discovery is required on the issue of damages," which the court noted was entirely premature before it had ruled on the defendants' still-to-come motion to decertify. *Id.* at *6.

[11] Plaintiffs give the citation as *143* F.R.D. 466.

[12] Master Docket No. 06–cv–17430–WYD–CBS, 2009 WL 1120293 (D. Colo., April 27, 2009).

determining the proper scope of discovery; instead, the motions at issue arose out of several opt-in plaintiffs' failure to *respond* to discovery. The court noted that in the two consolidated cases before it, the defendant had been permitted to depose about thirty opt-in plaintiffs overall, and to obtain written discovery from about a quarter of the opt-ins in one case and *all* of the opt-ins in another. *Id.* at *4-6. There is simply no discussion regarding what relationship, if any, those figures bore to the (unspecified) number of worksites at issue.[13]

The case of *Scott v. Bimbo Bakeries, USA, Inc.*, 2012 U.S. Dist. LEXIS 175016 (E.D. Pa. Dec. 11, 2012)[14] is likewise inapposite. In *Scott*, the defendant sought permission to serve full-blown discovery on every one of the 650 opt-in plaintiffs – drivers of delivery trucks for a bakery with nationwide operations. The dispute at issue was whether these drivers had properly been classified as independent contractors. *Id.* at *2-3. There was no discussion of the geographic scope of the group, or whether they worked at more than one worksite (or indeed, any worksite at all). However, in denying the defendant's request for relief far broader than what Belk now seeks, the court echoed *Craig* by noting with seeming approval six (6) cases permitting full, *individualized* discovery from opt-in collectives averaging 145 members. *Id.* at *14.

This is the authority on which **Plaintiffs** rely in support of their proposal to severely limit "representative" discovery to a mere *five percent* of the opt-in plaintiffs. It is clear from the Plaintiffs' proposal that they seek to rely on the "shock value" of the number of individuals Belk seeks to depose or subject to written discovery and not the merits of Belk's request. In fact, as set forth herein, Plaintiffs' cited authority tends to largely support Belk's reasonable request to

---

[13] With 426 docket entries, counsel for Belk has not undertaken to scour the record in *American Family* to attempt to answer this question.

[14] Civil Action No. 10–3154, 2012 WL 6151734 (E.D. Pa. Dec. 11, 2012).

be permitted to conduct the truly representative discovery set forth fully in Belk's discovery plan and brief in support [Doc. Nos. 74-75].

## II.
## CONCLUSION

For the foregoing reasons, Belk respectfully requests that the Court enter a scheduling order and discovery control plan consistent with Belk's proposal [Doc. No. 74].

Respectfully submitted,

By: */s/ John B. Brown*
JOHN B. BROWN
Texas Bar No. 00793412
E-mail: john.brown@ogletreedeakins.com
STEPHANIE JOHNSON MANNING
Texas Bar No. 24099422
E-mail: stephanie.manning@ogletreedeakins.com

**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.**
8117 Preston Road, Suite 500
Dallas, TX 75225
Telephone: (214) 987-3800
Facsimile: (214) 987-3927

**ATTORNEYS FOR DEFENDANT
BELK, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of February, 2017, I caused a true and correct copy of the above and foregoing instrument to be filed with the Clerk of Court, using the CM/ECF system that will send notification of such filing to all counsel of record.

*/s/ John B. Brown*
John B. Brown

28646313.1