UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| Hope Halleen and Donna Maner, individually and on behalf of all others similarly situated,<br><br>　　　　　　　Plaintiffs,<br><br>　v.<br><br>Belk, Inc.,<br><br>　　　　　　　Defendant. | CIVIL ACTION NO.:<br>4:16-CIV-00055 |

**PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION, AND <u>PROPER, COMPLETE ANSWERS TO INTERROGATORIES</u>**

Plaintiffs Hope Halleen and Donna Maner and Opt-In Plaintiffs (hereinafter "Plaintiffs"), file this Motion to Compel, seeking production of documents and electronically stored information ("ESI"), and better answers to interrogatories requested by Plaintiffs of Defendant Belk, Inc. (hereinafter "Defendant" or 'Belk").

**I.　INTRODUCTION**

Plaintiffs, current and former Sales Team Managers ("STMs") at Defendant's department stores alleging that they were misclassified as "exempt" under the FLSA, propounded their Interrogatories (Exhibit A) and Request for Production of Documents (Exhibit B) to Defendant on June 27, 2017. Defendant responded on July 28, 2017, providing no substantive responses to interrogatories,[1] asserting mostly boilerplate objections to every discovery request, and refusing to produce documents until a protective order was in place, even though one had been in place since March 10, 2016. *See* (ECF No. 19). Following conferrals, Defendant amended its responses to

---

[1] Defendant did not respond to any interrogatories asserting that Plaintiffs had exceeded the number of interrogatories permissible under the Federal Rules of Civil Procedure, maintaining that an interrogatory seeking the basis for affirmative defenses counted as thirteen sub-parts, one for each of their enumerated defenses.

the Interrogatories (Exhibit C) on February 13, 2018, limiting its responses, responding with many unusable documents, and maintaining several form objections. Defendant amended its responses to the Request for Production (Exhibit D) on February 28, 2018, following a hearing and this Court's February 20, 2018 Order requiring them to do so. (ECF No. 93). Based on counsel's experience in comparable retail cases with a comparable number of Opt-Ins and Discovery Plaintiffs, defendants would have often produced hundreds of thousands of pages of documents through this stage of litigation. To date, Defendant has produced fewer than 9,000 pages.

At this late date, Plaintiffs require production of the requested information, not simply amended responses. To date, Defendant has failed to collect or even determine the volume of material responsive to Plaintiffs' Discovery Requests, particularly with respect to ESI materials. Absent a court ruling on the following items the parties will not be able to meet the already extended discovery deadline: (1) finding that Defendant has waived its objections to Plaintiffs' Request for Production and Interrogatories; (2) ordering and compelling Defendant to produce all documents responsive to the Request for Production and provide complete answers to all Interrogatories within ten days of the Court's Order; (3) ordering the extent and scope of ESI custodians to be collected and searched (*see* Plaintiffs' Proposal, *infra* at Exhibit E), including whether Defendant is required to collect and search ESI from the district, regional and corporate-level; (4) ordering the search methodology to be used, including the search terms and parameters, to be applied to the custodians, including the store email boxes (*see* Exhibit E); (5) ordering Defendant to produce discovery, including ESI discovery in connection with identified corporate custodians and their 30(b)(6) corporate representative(s); and (6) ordering Belk to produce documents in a usable format pursuant to a static production protocol.

During the February 20, 2018 hearing, the Court ruled that, upon receipt of the amended responses, Plaintiffs could bring a motion to compel as to Defendant's discovery responses without the need for further conferral. Defendant's amended discovery responses are replete with non-answers. Defendant's responses to Plaintiffs' attempts to confer regarding ESI production efforts have also made it clear that, absent Court intervention, Defendant will not provide the information essential for Plaintiffs to advance their claims. Plaintiffs now seek the Court's consideration of this Motion to Compel.

## II. LEGAL STANDARD

Rule 26(b)(1) of the Federal Rules of Civil Procedure permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). "Control of discovery is committed to the sound discretion of the trial court." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009) (quoting *Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 382 (5th Cir. 1987)).

The Local Rules of this Court provide guidance as to information that is "relevant to a party's claim or defense." Local Rule CV-26 states in relevant part:

> (d) **Relevant to Any Party's Claim or Defense.** The following observations are provided for counsel's guidance in evaluating whether a particular piece of information is "relevant to any party's claim or defense:"
> (1) it includes information that would not support the disclosing parties' contentions;
> (2) it includes those persons who, if their potential testimony were known, might reasonably be expected to be deposed or called as a witness by any of the parties;
> (3) it is information that is likely to have an influence on or affect the outcome of a claim or defense;
> (4) it is information that deserves to be considered in the preparation, evaluation or trial of a claim or defense; and
> (5) it is information that reasonable and competent counsel would consider reasonably necessary to prepare, evaluate, or try a claim or defense.

E.D. Tex. Local Rule CV-26(d).

On notice to other parties and all affected persons, Rule 37 of the Federal Rules of Civil Procedure allows a discovering party to seek an order compelling disclosure or discovery. Fed. R. Civ. P. 37(a)(1). "The moving party bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence." *Tsanacas v. Amazon.com, Inc.*, Civil Action No. 4:17-CV-00306, 2018 U.S. Dist. LEXIS 3105, *3 (E.D. Tex. Jan. 8, 2018) (citing *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006)). Once the requesting party establishes that the information or materials requested are within the scope of permissible discovery, the burden then shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, unduly burdensome or oppressive, and thus should not be permitted. *Id.*

Federal Rule of Civil Procedure 34 requires responses to "either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B). "An objection [to the entire request] must state whether any responsive materials are being withheld on the basis of that objection." *Id.* 34(b)(2)(C). "An objection to part of a request must specify the part and permit inspection of the rest." *Id.*

Similarly, Federal Rule of Civil Procedure 33 governs interrogatory requests and responses thereto. Rule 33 also requires that '[t]he grounds for objecting to an interrogatory must be stated with specificity." Fed. R. Civ. P. 33(b)(4). *See Round Rock Research, LLC v. Dell, Inc.*, No. 4:11-CV-332, 2012 U.S. Dist. LEXIS 188018, *3 (E.D. Tex. Mar. 26, 2012) (stating that interrogatories must be answered or specifically and timely objected to, and evasive or incomplete response must be treated as a failure to respond).

To determine the permissible scope of discovery, the federal rules consider the proportionality of the discovery requested to the needs of the case. Fed. R. Civ. P. 26(b)(1). The burden falls on both parties and the court to consider the proportionality of all discovery in resolving discovery disputes. Fed. R. Civ. P. 26(b)(1), advisory committee note (2015). This rule relies on the fact that each party has a unique understanding of the proportionality factors that bear on the particular issue. *Id.* For example, a party requesting discovery may have little information about the burden or expense of responding. *Id.* "The party claiming undue burden or expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination." *Id.*

### III. PLAINTIFFS' REQUESTS ARE RELEVANT TO THE ISSUES IN THIS CASE

Plaintiffs' Discovery requests are all within the permissible scope of discovery and well within the guidelines set forth in Local Rule CV-26 of the Local Rules of the Eastern District of Texas. Defendant has not provided sufficient information or basis to establish that the requests are not within the permissible scope of discovery. All of Plaintiffs' requests are material to the claims at issue in this case and seek information that either 1) would not support Defendant's contentions; 2) includes those persons who, if their potential testimony were known, might reasonably be expected to be deposed or called as a witness by any of the parties; (3) is information that is likely to have an influence on or affect the outcome of a claim or defense; (4) is information that deserves to be considered in the preparation, evaluation or trial of a claim or defense; or (5) is information that reasonable and competent counsel would consider reasonably necessary to prepare, evaluate, or try a claim or defense necessary. *See* E.D. Tex. Local Rule CV-26(d); *See United States ex rel. Fisher v. Homeward Residential, Inc.*, No. 4:12-CV-461, 2016 U.S. Dist.

LEXIS 32910 (E.D. Tex. Mar. 15, 2016) (relying on guidance from Local Rule CV-26(d) in determining relevance of discovery requests).

### A. Duties and How Opt-Ins Are Similarly Situated

Plaintiffs' primary duties actually performed are the focus of any collective class action alleging misclassification as exempt under the FLSA. Also, courts look at a number of factors in determining whether the opt-ins are sufficiently similar to maintain the action as a FLSA Collective. For example, in *Morgan* the Court examined evidence collected by the parties that demonstrated that the opt-in store managers were factually similar in many respects including:

> (1) their universal classification as store managers with the same job duties; (2) the small fraction of time they spent on managerial duties; (3) the large amount of time they spent on non-managerial duties such as stocking shelves, running the cash registers, unloading trucks, and performing janitorial work; (4) the restrictions on their power to manage stores as compared to the district manager's sweeping managerial discretion; (5) the amount of close district manager supervision of store managers; (6) the lack of managerial discretion that [Defendant's] corporate policies afforded to store managers; (7) their day-to-day responsibilities; (8) their receiving base salaries regardless of the hours worked and no overtime pay; (9) their sharing certain managerial duties with hourly employees; (10) their maintaining production and sales records; (11) their inability to authorize pay raises; (12) their power to train subordinates; (13) their restricted authority to close stores in the event of emergencies; and (14) their inability to select outside vendors without district manager approval.

*Id*. at 1262–63.

Thus, evidence indicating whether Plaintiffs performed similar duties and were treated similarly by Belk is evidence that Plaintiffs require to be able to both establish the merits of their misclassification claim, and to maintain it as a collective action. In their discovery requests Plaintiffs requested information that is essential to establish their lack of discretion and extensive performance of non-managerial, manual work. To that end, Plaintiffs' emails and communications from their supervisors as well as directives sent to Plaintiffs, such as checklists, protocols, planograms, merchandising guides, and ad sets, are all instructive as to the limitations that Belk

regularly exercised on the STM position that severely proscribed STMs' discretionary functions. Also at issue is the degree to which Belk's large corporate structure micromanaged the work of STMs, and the degree to which Belk's comprehensive corporate controls compelled STMs to perform primarily non-exempt work. This is the exact type of information that the *Morgan* Court relied on in its seminal decision.

Similarly, Belk's disciplinary criteria, training materials, performance evaluations, time studies, job descriptions, hiring criteria, policies, procedures, protocols, performance criteria, exempt classification for all positions in the stores, and performance goals all document the uniform treatment of the STM position by Belk squarely supporting Plaintiffs' assertion that the Opt-In Plaintiffs are similarly situated. Plaintiffs requested this information in Requests for Production 2-8, 12-16, 19-20, 23-26, 33, 37, 38, 42-44, and 48, and Interrogatories 10, 14, and 15. Defendant has refused to produce all responsive documents, structuring their responses such that Plaintiffs cannot determine which of these materials is being withheld.

### B. Classification of STMs as Exempt, Willfulness and Good Faith Defenses

Belk has affirmatively asserted the defense of good faith (*see* ECF No. 14 at 8 ¶ 11), which places its state of mind—as to whether it misclassified the collective willfully (i.e., recklessly) or in good faith at issue.[2] Where the defendant acted willfully, the statute of limitations is three, rather than 2 years. 29 U.S.C. § 255. Plaintiffs are entitled to liquidated damages unless the employer demonstrates that it acted in good faith. 29 U.S.C. § 260. Plaintiffs allege that Defendant willfully misclassified Plaintiffs as exempt, thereby triggering a 3-year limitations period under the FLSA. Defendant's initial classification of the position as exempt, maintenance of the position

---

[2] In its response to Request No. 22, Defendant states that it has withdrawn its Affirmative Defense No. 11, its "good faith" defense. However, Defendant has not yet filed a notice of withdrawing the defense or an amended pleading removing the defense from its response to the Amended Complaint.

as exempt, and the factors of which Defendant was aware or considered in classifying Plaintiffs as exempt are all within the scope of permissible discovery in FLSA misclassification collective actions. Plaintiffs' Requests for Production 19-22, 26, 39, 53, and 54, and Interrogatories 1, 8, 12, and 13 relate directly to these topics raised in this suit.

### C. The RVPs Are Proper Custodians for Which ESI Should Be Produced

This Court should order the production of Corporate ESI for identified Corporate Custodians and the 30(b)(6) witness(es), including Regional Vice Presidents ("RVPs"). Defendant asserts that it is entitled to an overtime exemption in connection with the STMs position, however "exemptions are not available . . . for employees who simply apply well-established techniques or procedures described in manuals or other sources within closely prescribed limits to determine the correct response to an inquiry or set of circumstances." *See* 29 C.F.R. § 541.704. Again, for this reason, corporate control is a critical aspect of any misclassification case. *See Morgan v. Family Dollar Stores*, 551 F.3d 1233, 1270-71 (11th Cir. 2008) (upholding plaintiffs' verdict in misclassification case where plaintiffs "rarely exercised discretion because either the operations manuals or the district managers' directives controlled virtually every aspect of a store's day-to-day operations"). Plaintiffs' requests, and the search terms that Plaintiffs proposed to narrow the ESI component of RFP No. 37 (emails to/from Discovery Opt-ins), No. 38 (emails to/from general email addresses), No. 46 (emails/memos/communications to/from district/regional managers to the stores) and No. 54 (checklists/task lists or similar instructions generated from visits from corporate) are specifically aimed at eliciting materials that document the control exercised by corporate and the Store Manager on the STM position, all of which resulted in closely proscribed limitations affecting STMs' discretion. Plaintiffs' Counsel, based on information available, expect that documents contained on Belk's employee portal which it refers to as Workbench and in its Task

Manager and Hanger systems will contain these materials, as well as the email accounts of the RVPs and STMs, all of which have yet to be produced. Conspicuously absent from Defendant's production are ANY such materials that evidence corporate control. Defendant's aim is transparent, claim that all documents that are unhelpful to their case are irrelevant or too burdensome to produce. No case law is needed to support Plaintiffs' unarguable contention that this is not how discovery works. Moreover, as of the filing of this motion Defendant has yet to identify its Fed. R Civ. P. 30(b)(6) corporate representative, which has the dubious effect of stymying the parties' acquisition of relevant ESI in connection with these individuals.

Courts agree that the production of ESI from up the chain supervisors must be produced in connection with retail misclassification cases. *See, e.g., Camesi v. Univ. of Pittsburgh Med. Ctr.*, 269 F.R.D. 493, 496 (W.D. Pa. 2010) (ordering defendants to identify corporate custodians and to produce responsive materials on requested topics such as "e-mails and other communications between management, payroll, and human resources departments discussing . . . training meetings involving the policy; and surveys, investigations and audit reports"). After numerous conferrals Belk indicated that it could not at this time make a final determination as to whether it would produce corporate discovery and that it could only make this determination following an understanding of its total ESI production. This approach deprives Plaintiffs of the ability to use this critical information during the ongoing depositions. Without further discovery, Plaintiffs will have no materials to use in their 30(b)(1) depositions of the discovery opt-ins' supervisors and, in fact, have not yet been able to notice any such witnesses. Plaintiffs respectfully request that the Court order production of the attached ESI proposal for the corporate custodians. *See* Exhibit E.

### D. General Information Related to Multiple Issues in the Case

Plaintiffs' remaining requests seek basic discoverable information relevant to multiple issues in this case. Requests for such relevant information sought include Requests for Production 26 (documents supporting affirmative defenses), 29 (statements and declarations related to this case), 30 (case-related documents received from third parties), 32 (communications with third parties), 35 (documents relied on for interrogatory responses), 37 (emails to or from discovery opt-ins), 38 (emails to or from general email boxes at the stores where discovery opt-ins worked), and 41 (documents given to declarants in the course of obtaining their declarations).

## IV. DEFENDANT'S OTHER OBJECTIONS ARE DEFICIENT, INAPPLICABLE, AND/OR WITHOUT MERIT

Defendant has waived its objections asserted in its Amended Response to the Request for Production of Documents and Interrogatories. These responses are littered with unfounded or insufficiently explained "overly burdensome" objections, only produce (or agree to produce) documents "subject to" multiple objections in most instances failing to state whether documents were withheld based on the objections, and asserts privileges without providing privilege logs. To the extent Defendant's objections lack specificity, they are waived. To the extent the objections are insufficient, they must be overruled. Similarly, Defendant's privilege objections, without accompanying privilege logs, must also be overruled.

### A. The Assertions of Privilege or Confidentiality and Defendant's Failure to Provide Privilege Logs

Defendant has asserted privilege objections in response to several requests. Despite specific requests from Plaintiffs for Defendant to do so, Defendant has not provided a single privilege log to accompany those objections. Defendant's amended responses to Requests for Production 19, 20, 22, 26, 29, 30, 32, 35, 39, 41, 46, 47, 50, and 53 and amended Interrogatory responses 1, 8, 13, and 15 all assert privilege or confidentiality objections without privilege logs.

Rule 26(b)(5) requires a privilege log to be produced for any information, documents, communications, or other materials withheld from production or disclosure on privilege grounds. *See RealPage, Inc. v. Enter. Risk Control, LLC*, Civil Action No. 4:16-CV-00737, 2017 U.S. Dist. LEXIS 46270, *13-14 (E.D. Tex. Mar. 29, 2017) (ordering defendants to produce a privilege log for each assertion of privilege in accordance with Rule 26(b)(5)).  To the extent Defendant asserts confidentiality concerns, any such objection is mooted by the confidentiality protective order governing this case.  *See Id.* at *13 (overruling confidentiality objections in light of protective order applicable governing the case).  Defendant has made improper confidentiality objections to Request for Production number 43 and Interrogatories 6, 8, and 13.

**B.  Defendant's "Subject To" Responses**

Defendant responds to approximately 30 of the 55 production requests and 12 of the 15 interrogatories by providing documents or information "subject to" objections, failing to state whether documents or information are being withheld due to the stated objections.  The only exceptions are the handful of responses in which Defendant states it has found no documents.  Defendant's following amended responses to the Requests for Production and Interrogatories are made "subject to" objections without indicating whether documents are being withheld pursuant to objections asserted:  Request for Production amended responses 2-4, 6-10, 12, 13, 16, 17, 19, 21-27, 29, 30, 33, 42, 46-48, and 50, and Interrogatories 1-8, 10, and 13-15.  As this Court has unequivocally stated, by producing documents "subject to" its objections, the objecting party has in effect waived them:

> The practice of including "subject to" or "without waiving" statements after objections is an age-old habit comparable to belts and suspenders. This practice is "manifestly confusing (at best) and misleading (at worse), and has no basis at all in the Federal Rules of Civil Procedure." *KeyCorp v. Holland*, No. 3:16-cv-1948-D, 2016 U.S. Dist. LEXIS 147926, 2016 WL 6277813, at *11 (N.D. Tex. Oct. 26, 2016) (quoting *Carr v. State Farm Mut. Auto. Ins.*, 312 F.R.D. 459, 470 (N.D. Tex.

11

> 2015)). Such an objection and answer "leaves the requesting [p]arty uncertain as to whether the question has actually been fully answered," *Consumer Elecs. Ass'n v. Compras & Buys Magazine, Inc.*, No. 08-21085-CIV, 2008 U.S. Dist. LEXIS 80465, 2008 WL 4327253, at *3 (S.D. Fla. Sept. 18, 2008), and "wondering as to the scope of the documents or information that will be provided as responsive." *Heller v. City of Dall.*, 303 F.R.D. 466, 487 (N.D. Tex. 2014).
>
> Rule 34 does not allow this kind of hedging. Rule 34 allows a party either to "state that inspection and related activities will be permitted as required" or to "state with specificity the grounds for objecting to the request." Fed. R. Civ. P. 34(b)(2)(B). If a party chooses to object to part of a request, the party "must specify the part and permit inspection of the rest." Id. 34(b)(2)(C). A response that states "subject to the foregoing" is not specific enough as to either (1) the completeness of the answer or (2) the availability of documents for inspection. The Court finds that Defendants' inclusion of "subject to the foregoing" is not supported by the federal rules and goes against the purposes of a just, speedy, and inexpensive resolution. *See Carr*, 312 F.R.D. at 470.
>
> By answering questions "subject to" Defendants failed to specify the scope of their answer in relation to the request. This makes it impossible for Plaintiffs or the Court to assess the sufficiency of the response. Therefore, Defendants have waived each objection, except to RFP 11, by including "subject to" language in their responses.

*RealPage, Inc. v. Enter. Risk Control, LLC*, Civil Action No. 4:16-CV-00737, 2017 U.S. Dist. LEXIS 46270, *6-7 (E.D. Tex. Mar. 29, 2017). The concerns this Court raised in *RealPage* are equally applicable here. In the 30 instances in which Defendant has produced or agreed to produce documents "subject to" objections, Plaintiffs are left uncertain as to whether the request was answered and whether additional responsive documents exist. As such, Defendant has waived each objection asserted, and must produce all responsive documents and information.

### C. Defendant's Boilerplate Overly Broad and Burdensome Responses are Legally Insufficient and Unfounded

Defendant's boilerplate objections that Plaintiffs' requests are not "proportional" are not permissible under the Federal Rules of Civil Procedure. *See* Rule 26(b)(1), advisory committee note (2015) (stating that a party may not "refuse discovery simply by making a boilerplate objection that it is not proportional."); *Fischer v. Forrest*, No. 14 Civ 1304, 1307 (PAE)(AJP),

12

2017 WL 773694, *1 (S.D.N.Y. Feb. 28, 2017) (issuing a "wake-up call" to the district bar that the Federal Rules of Civil Procedure require that objections be stated with specificity and whether responsive documents are being withheld). Similarly, this Court has stated that it is the resisting party's burden to establish how the request is overly broad, burdensome or oppressive. *See Tsanacas v. Amazon.com, Inc.*, Civil Action No. 4:17-CV-00306, 2018 U.S. Dist. LEXIS 3105, *5 (E.D. Tex. Jan. 8, 2018), *citing McLeod, Alexander, Powel & Apffel, P.C. v. Quarles,* 894 F.2d 1482, 1485 (5th Cir. 1990) (in turn quoting *Josephs v. Harris Corp.,* 677 F.2d 985, 991-92 (3d Cir. 1982)). Here, Defendant's proportionality objections do not meet Defendant's burden.

> Defendant asserts the following boilerplate response to 20 of the 55 production requests:
>
> Further inquiry to comply with Plaintiffs' overly broad and burdensome request, as written and discussed, outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues, particularly in light of the information provided.

Many other responses include a variant of Defendant's "over burdensome" objection. This boilerplate objection does not meet the requirements of Rules 33(b)(4) or 34(b)(2)(B) of the Federal Rules of Civil Procedure. For example, Defendant asserted boilerplate or otherwise insufficient proportionality objections to the following requests: Requests for Production 2-4, 6-10, 12-17, 19-22, 24-28, 32, 33, 37-38, 41, 43, 44, 46-48, 51, 53, and 54, and Interrogatories 1-5, 7, 8, 10, 12, 13, and 15.

Defendant does not sufficiently state **how** any of the requests are overly broad or burdensome. Defendant has not identified the costs associated with complying with the requests, the time effort required to comply with the requests, or any other information pertinent to the objections. *See Tsanacas v. Amazon.com, Inc.*, Civil Action No. 4:17-CV-00306, 2018 U.S. Dist. LEXIS 3105, *5-7 (E.D. Tex. Jan. 8, 2018) (finding that boilerplate and non-specific

overbroad/overly burdensome/irrelevant objections are waived, and that even if not waived, objecting party fails to meet their burden under Rule 34 when objections do not specify their basis).

### D. Belk's Failure to Provide Hit Reports and Engage in Basic Discussions as to Tailoring ESI Cannot Be Supported by a Baseless Proportionality Argument

Belk's improper proportionality objection most directly impacts Defendant's response to Plaintiffs requests which implicate ESI discovery. Preliminarily, it should be noted that failure to produce paper discovery means that we have had difficulty in narrowing our terms. Plaintiffs need a sampling of one RVP and one STM email box using the terms originally proposed (*see* Exhibit F), which will aid Plaintiffs in evaluating proposed search terms for the RVP and STM email boxes. Defendant cannot make the scope of their proposed ESI production contingent on their overall production, rather than provide a relevant percentage of ESI from all custodians.

Belk claims that making productions from relevant corporate custodians are not proportional to the needs of the case, and it improperly seeks to prevent collecting and providing hit reports for many crucial custodians (including the RVP position and all custodians listed on Plaintiffs proposals, attached here to as Exs. E and F) on this basis. In fact, Defendant proposes the unworkable proposition that they be required to produce ESI for only the STM email boxes and following this production, at some unspecified later date it will consider supplementing from other sources of ESI. Defendant cannot make their proposal contingent on their overall production, rather than provide a relevant percentage of ESI from all custodians. The only hit report that Belk produced in this action was on January 18, 2018 and this analysis related only to an STM email box, it provided no insight into the hits that would be generated by the RVP email boxes. After receipt of the hit report, Plaintiffs offered to take a meager 25% of the total hits produced, a sampling which Plaintiffs would use in an effort to streamline their remaining search terms. In response Defendant only agreed to produce a 5% sample, which to date they have not yet produced.

Absent a court order requiring production of a 25% sample of a RVP and STM email box, Plaintiffs will clearly not be able to properly evaluate and tailor their search terms which will result in Plaintiffs' failure to acquire ESI discovery essential to this action. Plaintiffs' search terms were generated by discussions with their client and their knowledge of Belk's retail operations in an effort to acquire the types of materials discussed further in section III. *supra*.

In response to Plaintiffs' requests Belk failed to produce documents in the format that it represented that they would. Rather than produce documents in TIFF format with load files, Defendant produced documents in either unsearchable PDFs or native format. The result for this has been an inability by Plaintiff to avail itself of its ESI review platform.[3] Plaintiffs respectfully request that the Court order that Belk produce its documents as TIFFs with load files.

### E. Defendant's Partial Responses

Defendant provided partial or otherwise limited its responses to many discovery requests, thereby evading Defendant's duty to provide full responses. As this Court has stated, "[a]n evasive or incomplete response suffices to show a failure to respond. *Id.* [Fed. R. Civ. P.] 37(a)(4). *RealPage, Inc.* 2017 U.S. Dist. LEXIS 46270 at *14-15. Where Defendant has provided a limited or partial response, particularly where it simultaneously indicates other documents exist, this Court should order that Defendant produce all documents responsive to the request. Defendant has provided evasive partial responses to Requests for Production 1, 3, 7-10, 14, 16, 19, 21, 42, 46, 47, and 50, and Interrogatories 2, 4-6, 10, and 14.

For all of the above reasons, Defendant has waived its objections to the requests or the asserted objections should be overruled.

---

[3] To access many files Plaintiffs have had to move from subfolder to subfolder to locate and access produced native files, this adds significant time to Plaintiffs' review.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs request an order finding that Defendant has waived its objections to Plaintiffs' Request for Production and Interrogatories, or otherwise overruling Defendant's objections, and compelling Defendant to produce all documents responsive to the Request for Production and provide complete answers to all Interrogatories within ten days of the Court's Order, and grant such further relief as the Court deems appropriate.

Dated: March 26, 2018

Respectfully submitted,

By: */s/ Alan L. Quiles*

Alan L. Quiles
Texas Bar No. 24075418
Gregg I. Shavitz
Paolo C. Meireles
**SHAVITZ LAW GROUP, P.A.**
1515 S. Federal Highway, Suite 404
Boca Raton, Florida 33432
Telephone: (561) 447-8888
Facsimile: (561) 447-8831

Charles Gershbaum
David A. Roth
Marc S. Hepworth
Rebecca S. Predovan
**HEPWORTH GERSHBAUM & ROTH, PLLC**
192 Lexington Avenue, Suite 802
New York, NY 10016
Telephone: (212) 545-1199
Facsimile: (212) 532-3801
www.hgrlawyers.com

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that I electronically filed the foregoing document with the Clerk of Court using CM/ECF on March 26, 2018. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

John B. Brown
John.brown@ogletreedeakins.com
Stephanie J. Manning
Stephanie.manning@ogletreedeakins.com
James T. McBride
James.mcbride@ogletreedeakins.com
**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, PC.**
Preston Commons West
8117 Preston Road, Suite 500
Dallas, TX 75225
Tel: 214-987-3800
Fax: 214-987-3927

*Attorneys for Defendant
Belk, Inc.*

                                                  *s/ Alan L. Quiles*
                                                  Alan L. Quiles