# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| HOPE HALLEEN, DONNA MANER, and all others similarly situated; | § § § § § § § |
| v. | CIVIL ACTION NO. 4:16-CV-00055-ALM JUDGE MAZZANT |
| BELK, INC. | |

## MEMORANDUM OPINION AND ORDER

BEFORE THE COURT is Plaintiffs Hope Halleen and Donna Maner, individually and on behalf of all others similarly situated, and Defendant Belk, Inc.'s Joint Motion for Approval of FLSA Collective Action Settlement (Dkt. #174). The parties have reached a settlement and request the Court approve their Settlement Agreement, Notice Packet, Enhancement Awards, and request for attorneys' fees and reimbursement of costs (Dkt. #174-1). Having considered the motion and relevant pleadings, the Court determines the parties' joint motion should be granted (Dkt. #174).

### I. Settlement Approval

Generally, Fair Labor Standards Act ("FLSA") claims can only be compromised after a court reviews and approves the settlement. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982).

> The primary focus of the Court's inquiry in deciding whether to approve the settlement of a FLSA collective action is not on due process concerns as it would be for a Rule 23 class action. Rather, the Court primarily focuses on ensuring that an employer does not take advantage of its employees in settling their claim for wages.

*Dyson v. Stuart Petroleum Testers, Inc.*, No. 1:15cv282-RP, 2016 WL 815355, at *2 (W.D. Tex. Feb. 29, 2016) (quoting *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 719 (E.D. La. 2008)) (internal ellipsis and brackets omitted). A settlement should be approved if it "reflect[s] a

reasonable compromise over issues . . . that are actually in dispute." *Lynn's Food Stores*, 679 F.2d at 1354. "The requirement of an adversarial posture between parties to a settlement agreement operates as a guarantee that employers cannot profit by coercing employees into waiving their rights, and then dressing that invalid waiver of the FLSA's protections as a valid settlement of a legal claim." *Sims v. Housing Auth. City of El Paso*, No. EP-10-CV-109-PKC, 2011 WL 3862194, at *6 (W.D. Tex. Sept. 1, 2011).

The Court must first determine whether a *bona fide* dispute exists between the parties. *See id.* Plaintiffs assert in their Amended Complaint that Defendant misclassified Sales Team Managers ("STMs") under the FLSA and failed to pay STMs overtime wages for hours worked over forty hours in a workweek (Dkt. #2). In its Answer, Defendant denied that it misclassified STMs, and asserted a number of affirmative defenses (Dkt. #14). The parties describe the course of the litigation:

> [After filing their pleadings], the Parties engaged in years of discovery, including depositions, and both interrogatories and the production of nearly one million pages of documents and Electronically Stored Information ("ESI"), including policy documents, emails, personnel records, payroll data, training materials, schedules, internal studies, and complete systems and databases that Plaintiffs requested. The Parties conferred extensively on ESI issues, including in-person conferences to confer about the scope and procedures for producing ESI. The Parties have also engaged in extensive motion practice before this Court and participated in a full day mediation session in Dallas, Texas.

(Dkt. #174-1 at p. 14). As demonstrated by the parties and after a review of the procedural history of this case, the Court determines that a *bona fide* dispute exists between the parties.

The next consideration is whether the proposed Settlement Agreement is fair and reasonable. *Dyson*, 2016 WL 815355, at *2. "Although the class-action provisions of Federal Rule of Civil Procedure 23 technically do not apply to collective actions under the FLSA, Rule

2

23(e) is similar because it requires court approval to finalize a proposed class action settlement." *Id.* As a result, courts often utilize the Rule 23(e) standard to determine whether a FLSA collective action settlement is fair and reasonable. *Id.*; s*ee also Jones v. JGC Dall. LLC*, No. 3:11cv2743-O, 2014 WL 7332551, at *3 (N.D. Tex. Nov. 12, 2014).

> There are six focal facets [under Rule 23(e)]: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members.

*Reed v. Gen'l Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983). The Court addresses each of these factors in turn.

First, "[t]he Court may presume that no fraud or collusion occurred between counsel in the absence of any evidence to the contrary." *Lee v. Metrocare Servs.*, 3:13-CV-2349-O, 2015 WL 13729679, at *5 (N.D. Tex. July 1, 2015) (citing *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 725 (E.D. La. 2008)). The Court finds no evidence of fraud or collusion between counsel and, therefore, presumes that not fraud or collusion occurred between counsel.

Second, "[w]hen the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened." *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 651 (N.D. Tex. 2010) (quoting *Ayers v. Thompson*, 358 F.3d 356, 373 (5th Cir. 2004)). Absent settlement, Plaintiffs would be required to incur the time and expense of taking additional depositions and seeking further discovery (Dkt. #174-1 at p. 16). Similarly, Defendant would be required to incur the cost of producing and reviewing terabytes of electronically-stored information, preparing witnesses for depositions, and taking the depositions of additional discovery opt-in plaintiffs (Dkt. #174-1 at

p. 16).[1] Accordingly, the reasonableness of approving the parties' settlement is strengthened as ongoing litigation threatens to impose high costs of time and money.

The goal of the third factor is to "evaluate[ ] whether 'the parties and the district court possess ample information with which to evaluate the merits of the competing positions.'" *Klein*, 705 F. Supp. 2d at 653 (quoting *Ayers*, 358 F.3d at 369). The parties represent to the Court that:

> This case was resolved only after nearly three years of hard fought and intense litigation. The Parties responded to several sets of interrogatories and document production requests, conducted approximately 19 depositions (including discovery opt-in plaintiffs and a third-party former Regional Vice President of Belk), and exchanged approximately one million documents (including Belk's production of policy documents, emails for corporate personnel and Opt-Ins, personnel records, payroll data, internal studies, and complete data systems and databases requested by Plaintiffs).

(Dkt. #174-1 at p. 17). Consequently, the Court finds the parties have had the opportunity to evaluate the merits of their respective positions, and this factor favors approval of the settlement.

The fourth factor, which is the most important factor absent fraud and collusion, considers the probability of the plaintiffs' success on the merits. *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982). When analyzing this factor, courts must judge the terms of the proposed settlement against the probability that the class will succeed in obtaining a judgment following a trial on the merits. *Reed*, 703 F.2d at 172. However, the court "must not try the case in the settlement hearings because the very purpose of the compromise is to avoid the delay and expense of such a trial." *Id.* Plaintiffs acknowledge the risks inhibiting their ability to ultimately prevail on the merits, including, defeating decertification motions, succeeding at the liability and damages phases of trial and post-trial motions, and succeeding on "Defendant's inevitable appeal to the Fifth Circuit." (Dkt. #174-1 at pp. 18–20). Meanwhile, the proposed Settlement

---
1. This does not include the cost of the approaching trial and post-trial litigation.

Agreement provides a formula for determining the recoverable amount for each STM (Dkt. #174-1 at pp. 20–21). Specifically, the Settlement Agreement establishes an average recovery representing 4.15 hours of overtime a week, per plaintiff, covering a three-year period (Dkt. #174-1 at pp. 20–21). The Settlement Agreement also provides for liquidated damages, effectively doubling the average 4.15 hour recovery (Dkt. #174-1 at pp. 20–21). Plaintiffs face considerable hurdles in succeeding on the merits, and the Settlement Agreement provides a fair and reasonable recovery for the Plaintiffs. Therefore, the Court finds this factor weighs in favor of approving the Settlement Agreement.

The fifth factor examines the range of possible recovery by the class. This factor primarily concerns the adequacy of the proposed settlement. *See Ayers*, 358 F.3d at 370. The parties dispute the hours of estimated time worked by Plaintiffs, whether a three or two-year statute of limitations applies, and whether Plaintiffs could recover liquidated damages (Dkt. #174 at p. 20). As described above, the Settlement Agreement provides monetary compensation representing overtime wages, covering a three-year period, and includes provisions for liquidated damages. Although the maximum possible award at trial could be larger than the settlement amount, there is also a significant chance it could be lower, or non-existent. Overall, the Settlement Agreement is adequate.

The sixth factor is the opinions of counsel and the class representatives.[2] This case has the benefit of experienced attorneys on both sides, who have negotiated settlements in other complex employment litigation, including class and collective action settlements (Dkt. #174-1 at p. 23). The parties and their attorneys agree that the settlement is a fair and reasonable resolution

---

2. *See Vassallo v. Goodman Networks, Inc.*, 15CV97-LG-CMC, 2016 WL 6037847, at *3 n.2 (E.D. Tex. Oct. 14, 2016) (there is no need to consider the opinions of absent class members in FLSA cases as FLSA settlements have no impact on absent class members).

of a *bona fide* dispute (Dkt. #174-1 at p. 23). Therefore, this factor supports a finding in favor of approving the Settlement Agreement.

After considering the *Reed* factors, the Court finds that the Settlement Agreement should be approved because it is a fair and reasonable settlement of a *bona fide* dispute.

## II. Notice Approval

Next, the Parties request the Court approve the proposed Notice Packet (Dkt. #174-1 at pp. 23–24, 38–46). The Notice Packet serves to inform each opt-in plaintiff of the general terms of the Settlement Agreement, stating the amount allocated to each opt-in plaintiff, including the settlement check to which they are entitled, tax treatment of the award, the scope of the release, and how plaintiffs can retain their claims if they choose not to participate in the settlement (Dkt. #174-1 at p. 23–24). After reviewing the proposed Notice Packet, the Court approves the Notice Packet.

## III. Enhancement Awards

In addition to the Settlement Checks, the parties have allocated Enhancement Award Checks ("EACs") for the two named plaintiffs and sixteen other opt-in plaintiffs who set for depositions in the case (Dkt. #174-1 at pp. 24–25). "Service awards to class representatives are permissible where they are fair and reasonable." *Lee*, 2015 WL 13729679, at *4 (citing *In re Heartland Payment Sys.*, 851 F. Supp. 2d 1040, 1089 (S.D. Tex. 2012)); *see also Purdie v. Ace Cash Express, Inc.*, CIV.A. 301CV1754L, 2003 WL 22976611, at *7 (N.D. Tex. Dec. 11, 2003) (approving $16,665 incentive award to named plaintiffs for actively participating in the lawsuit); *Camp v. Progressive Corp.*, CIV.A. 01-2680, 2004 WL 2149079, at *7 (E.D. La. Sept. 23, 2004) (awarding up to $10,000 incentive payments to class representatives). The EACs here are lower in amount then the cited incentive awards found in similar cases and compensate the individuals

for their additional time and service in this case. Reviewing the EACs at issue, the Court finds they are fair and reasonable considering the assistance provided by the named plaintiffs and opt-in plaintiffs who set for depositions in this case.

### IV. Attorney Fees and Costs

Pursuant to 29 U.S.C. § 216(b), the parties request an award of attorneys' fees and costs for Plaintiffs' Counsel (Dkt. #174-1 at pp. 25–31). The parties negotiated an agreed amount of attorneys' fees, which is specified in the Settlement Agreement. The amount is based on Plaintiffs' Counsel's lodestar fees, not on a percentage of the award to the Plaintiffs. Notably, the negotiated amount is significantly lower than Plaintiffs' Counsel's calculated lodestar fees.

"'[T]o fully discharge its duty to review and approve class action settlement agreements, a district court must assess the reasonableness of the attorneys' fees.'" *Dyson*, 2016 WL 815355, at *4 (quoting *Strong v. BellSouth Telecomm., Inc.*, 137 F.3d 844, 849 (5th Cir. 1998)). In common fund cases, courts in the Fifth Circuit are permitted to use either the percentage method or the lodestar method to calculate attorneys' fees. *Union Asset Mgmt. v. Dell, Inc.*, 669 F.3d 632, 644 (5th Cir. 2012).

The "lodestar" method is used to calculate attorneys' fees for purposes of fee awards. *See Tollett v. City of Kemah*, 285 F.3d 357, 367–68 (5th Cir. 2002). In calculating a lodestar, the number of hours reasonably expended by the attorneys are multiplied by an appropriate hourly rate in the community for such work. *See Singer v. City of Waco*, 324 F.3d 813, 829 (5th Cir. 2003). The party seeking reimbursement of attorneys' fees bears the burden of establishing the number of hours expended through the presentation of adequately recorded time records as evidence. *See Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). The Court then uses this as a

benchmark and excludes any time that is excessive, duplicative, unnecessary, or inadequately documented. *See id.* The hours remaining are those reasonably expended. *Id.*

After calculating the lodestar, the Court may either: (1) accept the lodestar figure; or (2) decrease or enhance it based on the circumstances of the case, taking into account what are referred to as the *Johnson* factors. *See La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 329 (5th Cir. 1995) (referring to *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)).[3] However, the lodestar is presumed to be reasonable and should only be modified in exceptional cases. *See Watkins*, 7 F.3d at 457.

### A. Hours Expended

The parties state that Plaintiffs' Counsel expended 3,707.7 hours on this case (Dkt. #174-1 at pp. 28–29). The attached declarations of attorneys Gregg Shavitz and Marc Hepworth detail the extensive amount of work and time required to prosecute the case (Dkt. #174-1 at pp. 48–80). Mr. Shavitz describes some of the work completed by attorneys at his firm over the past two years:

> 6. The Court conditionally certified a collective of Belk STMs on September 16, 2016. Thereafter, notice and consent forms were issued to approximately 1,793 current and former Belk STMs, and 384 individuals them opted into this litigation.
>
> 7. The Parties engaged in years of discovery, including taking 19 depositions in several states, and extensive written discovery including interrogatories and the production directed at Plaintiffs and Defendants. The parties exchanged nearly one million pages of documents and electronically stored information ("ESI"), including policy documents, emails, personnel records, payroll data, internal studies, training materials, schedules and complete

---

3. The *Johnson* factors include: (1) the time and labor required; (2) the novelty and difficulty of the legal issues; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney as a result of taking the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the monetary amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case is undesirable; (11) the nature and duration of the professional relationship with the client; and (12) awards in similar cases. 448 F.2d at 717–19.

systems and databases. The Parties conferred extensively on discovery and ESI issues, including in-person conferences to confer about the scope and procedures for producing ESI. When conferences among counsel did not prove productive, the parties participated in conferences with the Court on discovery and related issues. The parties each also interviewed dozens of witnesses.

8. The Parties have also engaged in extensive motion practice before this Court. The parties briefed Defendants' Motion to transfer and Plaintiffs' Motion for Conditional Certification, Motions related to the scope and procedure of representative discovery, a motion to dismiss non-responsive opt-in discovery plaintiffs, a motion to compel discovery responses, and other requests for relief.

9. The parties also participated in a full day mediation session on May 9, 2018, in Dallas, Texas with mediator William H. Lemons. The case did not settle at mediation and litigation continued.

10. On October 1 and October 3, 2018, Plaintiffs' Counsel noticed three additional fact witness and corporate representative depositions and was continuously reviewing the voluminous production of documents and ESI from Defendant. Thus, substantial work remained to prepare for decertification and trial.

11. On October 5, 2018, following extensive arms-length negotiations, the parties reached an agreement in principle on the total settlement amount. The parties entered into a memorandum of understanding ("MOU") and informed the Court that the parties had reached an agreement.

(Dkt. #174-1 at pp. 49–50). Mr. Hepworth makes a similar showing, detailing 94 different tasks performed by attorneys at his firm during the case (Dkt. #174-1 at pp. 63–69). Defendant does not dispute that Plaintiffs' Counsel's reported hours are reasonable and accurate. Further, the Court notes that this case has been particularly contentious, requiring considerable motion practice and Court intervention. Accordingly, the Court finds that the parties meet their burden of establishing that Plaintiffs' Counsel reasonably expended 3,707.7 hours.[4]

---

4. Typically, the party seeking reimbursement of attorneys' fees bears the burden of establishing the number of hours expended through the presentation of adequately recorded time records as evidence. *See Watkins*, 7 F.3d at 457. Mr. Shavitz and Mr. Hepworth provide charts summarizing the number of hours recorded by their respective

### B. Hourly Rate

"[T]he relevant market for purposes of determining the prevailing rate to be paid in a fee award is the community in which the district court sits." *Tollett*, 285 F.3d at 368. "Generally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there." *Id.* However, "the district court is itself an expert in assessing these matters." *Davis v. Bd. of Sch. Comm'rs of Mobile Cty.,* 526 F.2d 865, 868 (5th Cir. 1976) (citing *Weeks v. S. Bell Tel. & Tel. Co.*, 467 F.2d 95, 98 (5th Cir. 1972) ("The court is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of testimony of witnesses as to value.").

Plaintiffs' Counsel and staff report hourly rates ranging between $100 and $600.00 (Dkt. #174-1 at pp. 59–60, 70). Plaintiffs' Counsel also describe their relevant backgrounds and represent that the hourly rates stated in their request are lower than the rates Plaintiffs' Counsel normally charge in order to reflect reasonable, customary rates charged by other attorneys in the community (Dkt. #174-1 at pp. 28 n.4, 54–59, 71–80). The evidence provided in Mr. Shavitz and Mr. Hepworth's declarations demonstrates that Plaintiffs' Counsel are experienced labor and employment attorneys, who are well-versed in litigating complex FLSA collective actions.

Although it is clear from this evidence that Plaintiffs' Counsel are highly qualified, the Court notes the hourly rates reported by Plaintiffs' Counsel are relatively high for labor and

---

firms, but do not provide the actual time records for the Court to review. The Court will not require Plaintiffs' Counsel to submit the actual time records for three reasons. First, Plaintiffs' Counsel testifies to expending 3,707.7 in the case, and this testimony includes specifying the types of tasks completed by Plaintiffs' Counsel. Second, Defendants do not dispute the hours reported by Plaintiffs' Counsel, and there is an incentive for Defendants to dispute the hours, as the attorneys' fees here are awarded separately, and not as a percentage of the fixed total award. *Dyson*, 2016 WL 815355, at *4 (Noting, "Defendants have no incentive to police attorneys' fees which are subtracted from a fixed total award . . . ."). Third, the requested attorneys' fees award is significantly less than Plaintiffs' Counsel's calculated lodestar amount, indicating to the Court that the parties have previously engaged in eliminating unnecessary hours recorded by Plaintiffs' Counsel.

10

employment attorneys located in the community.[5] However, Texas district courts have found hourly rates between $100 and $600 to be reasonable in FLSA cases after considering the experience of the lawyers, the reputation of the firm, and the complexity of the case. *See Olibas v. Native Oilfield Servs., LLC*, 104 F. Supp. 3d 791, 810 (N.D. Tex. 2015), *aff'd sub nom. Olibas v. Barclay*, 838 F.3d 442 (5th Cir. 2016); *Aguayo v. Bassam Odeh, Inc.*, 3:13-CV-2951-B, 2016 WL 7178967, at *15 (N.D. Tex. Dec. 8, 2016). Further, as mentioned previously, the parties agreed to a signficiantly lower attorneys' fee award than Plaintiffs' Counsel's calculated lodestar. Accordingly, the Court finds the hourly rates reported by Plaintiffs' Counsel to be reasonable in light of the attorneys' experience, the relevant rates for similar attorneys in this community, and the specific facts of this case.

Finding both the hours expended and hourly rates reasonable, the Court finds the lodestar calculated by the parties of $1,910,067 accurate.

### C. *Johnson* Factors

The lodestar is presumed to be reasonable and should only be modified in exceptional cases. *See Watkins*, 7 F.3d at 457. The Court may choose to accept the lodestar figure or decrease or enhance the figure after taking into account the *Johnson* factors cited above. Here, there is no need to consider the *Johnson* factors as the parties request an attorneys' fees award that is significantly lower than the calculated lodestar amount.

### D. Expenses

The parties also request that Plaintiffs' Counsel be reimbursed for expenses and costs for the amount specified in the Settlement Agreement. Plaintiffs' incurred $130,776.85 in expenses and costs—a higher amount than the amount agreed to in the Settlement Agreement. Given the

---

5. *See* STATE BAR OF TEXAS, 2015 HOURLY FACT SHEET (2015), https://www.texasbar.com/AM/Template.cfm?Section=Demographic_and_Economic_Trends&Template=/CM/ContentDisplay.cfm&ContentID=34182

duration and complexity of this case, the Court finds that the expense award agreed to by the parties in the Settlement Agreement is reasonable and should be approved.

## CONCLUSION

It is therefore **ORDERED** that the parties' Joint Motion for Approval of FLSA Collective Action Settlement (Dkt. #174) is hereby **GRANTED**. The Court **APPROVES** the Settlement Agreement, Notice Packet, Enhancement Awards, and the attorneys' fees and costs identified in the Settlement Agreement. The Court will enter an order of dismissal separately. *See* FED. R. CIV. P. 58(a).

**SIGNED this 20th day of December, 2018.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE